UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-62595-RAR

**HISCOX INSURANCE
COMPANY INC.**,

    *Plaintiff*,

v.

**WATFORD SPECIALTY
INSURANCE COMPANY**,

    *Defendant*.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court upon Plaintiff Hiscox Insurance Company Inc.'s Motion for Final Summary Judgment [ECF No. 38] ("Hiscox's Motion") and Defendant Watford Specialty Insurance Company's Motion for Summary Judgment [ECF No. 39] ("Watford's Motion"). Having reviewed the briefing,[1] the record, applicable law, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Watford's Motion [ECF No. 39] is **GRANTED** and Hiscox's Motion [ECF No. 38] is **DENIED** as set forth herein.

## BACKGROUND

This action arises from a sexual-assault lawsuit brought against Hiscox and Watford's mutual insured, Big Time Restaurant Group. *See* [ECF No. 40] ("Watford SMF") ¶ 1. Hiscox's insurance policy provided coverage for Employee Practices Liability ("EPL"), while Watford's insurance policy provided coverage for Commercial General Liability and Liquor Liability

___
[1] The briefing in this matter includes each party's Motion [ECF Nos. 38, 39]; Watford's Response in Opposition [ECF No. 41]; Hiscox's Reply in Support [ECF No. 46]; and the parties' Statements of Material Facts [ECF Nos. 37, 40, 42].

("CGL"). *See id.* ¶¶ 3, 5. To resolve the underlying sexual-assault action against Big Time, Hiscox admitted coverage and paid the full amount of the settlement reached between Big Time and the plaintiff. *See id.* ¶ 1. In contrast, Watford denied coverage, asserting that liability for the sexual assault—which was alleged to have been committed by an employee of Big Time—did not fall within the bounds of Watford's CGL policy. *See id.* ¶ 10. After paying the settlement, Hiscox brought the instant action, seeking equitable contribution from Watford for one-half of the settlement paid to the plaintiff. *See id.* ¶¶ 1, 11.

The parties have now moved for summary judgment. The central issue is whether Watford's CGL policy provided coverage for the underlying sexual-assault action, thus entitling Hiscox to seek equitable contribution from Watford. *Compare* Hiscox Mot. at 6 ("The language of . . . the WATFORD Policy plainly and unambiguously provides coverage for the allegations in the Underlying Action."), *with* Watford Mot. at 7 ("The Watford CGL Policy, in Contrast to the Hiscox EPL Policy, Unambiguously Excludes Coverage for the Employee Lawsuit."). Watford also argues that Hiscox—as a non-party to the Watford CGL policy—cannot suggest that Watford's CGL policy provides coverage beyond what Watford and Big Time agreed to when entering into the policy. *See* Watford Mot. at 12.

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may show the presence or absence of a genuine dispute of material fact by citing "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] . . . admissions, interrogatory answers, or other materials." *Id.* R. 56(c). A fact is "material" if it is a legal element of the claim under the applicable substantive law, such

that the fact might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). A dispute as to a material fact is "genuine" if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.*

### II. Equitable Contribution

Under Florida law,[2] the doctrine of equitable contribution exists "to prevent one of two . . . joint obligors [from] being required to pay more than his share of a common burden, or to prevent one obligor from being unjustly benefited or enriched at the expense of another." *Lopez v. Lopez*, 90 So. 2d 456, 458 (Fla. 1956). The foundational element of a claim for equitable contribution is that the parties share a "common obligation" to pay a third party. *See Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1006 (11th Cir. 2004) (applying Florida law). In the insurance context, whether there is a "common obligation" is a question of coverage. *See Cincinnati Specialty Underwriters Ins. Co. v. KNS Grp., LLC*, 561 F. Supp. 3d 1298, 1316 (S.D. Fla. 2021) (denying claim for equitable contribution after finding an absence of coverage).

### **ANALYSIS**

The dispositive issue in this case is whether Watford's CGL policy provided coverage for the employee misconduct alleged in the underlying sexual-assault action. Questions about coverage—and the interpretation of insurance contracts in general—are issues of law. *Siegle v. Progressive Consumer Ins. Co.*, 788 So. 2d 355, 357 (Fla. 4th DCA 2001), *approved*, 819 So. 2d 732 (Fla. 2002). Because the only issue here is one of law, this case is appropriate for summary judgment. *See, e.g., Evanston Ins. Co. v. Berlanga*, No. 11-20917, 2012 WL 13012426, at *4 (S.D. Fla. Jan. 12, 2012).

---

[2] The Court has subject matter jurisdiction over this action through diversity of citizenship. *See* [ECF No. 1] ¶¶ 2–3. The Court therefore applies the substantive law of the forum state, Florida. *See Erie R.R. Co. v. Thompkins*, 304 U.S. 64, 78–79 (1938).

### I. Watford's CGL Policy Excluded Coverage for the Underlying Sexual-Assault Action.

The Court construes insurance contracts according to their plain meaning, "endeavoring to give every provision its full meaning and operative effect." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007). Accordingly, the Court's analysis must begin by looking at what the Watford CGL policy says.

Watford's CGL policy with Big Time offered coverage for "Commercial General Liability" and "Liquor Liability." *See* [ECF No. 1-2] at 27. Relevant here, the Commercial General Liability policy covered "bodily injury" and "property damage." *See id.* at 63. However, several exclusions applied. For example, Watford's CGL policy did not cover "bodily injury . . . expected or intended from the standpoint of any insured, or any insured's employees, contractors, or agents." *Id.* at 64. Nor did Watford's CGL policy cover bodily injury to "an employee of the insured arising out of and in the course of employment with the insured or performing duties related to the conduct of the insured's business." *Id.* Watford's CGL policy also excluded coverage for "bodily injury to a person arising out of any . . . employment-related practices, policies, acts or omissions, such as . . . harassment [and] humiliation." *Id.* at 67.

Similar to its "bodily injury" and "property damage" coverage, the Watford CGL policy also covered damages arising from "personal and advertising injury."[3] *See id.* at 69. However, several exclusions applied to this coverage as well. The policy did not cover "personal and advertising injury actually or allegedly caused by or at the direction of . . . insured's employees, contractors, or agents with the actual or alleged knowledge that the act would violate the rights of

---

[3] "Personal and advertising injury" includes "injury, including consequential bodily injury, arising out of . . . false arrest, detention or imprisonment." *See* [ECF No. 1-2] at 78. Considering the plaintiff in the underlying sexual-assault action alleged that Big Time's employee locked her in a bathroom stall during the assault, *see id.* at 15, coverage for "personal and advertising injury" is relevant to this case.

another and would inflict personal and advertising injury." *Id.* Watford's CGL policy also excluded any "personal and advertising injury arising out of a criminal act committed by or at the discretion of the insured." *Id.* at 70. And, like the exclusion related to bodily injury and property damage, Watford's CGL policy excluded coverage for "personal and advertising injury to a person arising out of any . . . employment-related practices, policies, acts or omissions, such as . . . harassment [and] humiliation." *Id.* at 71.

The plain language of Watford's CGL policy—specifically, the exclusions therein—establishes that Watford's CGL policy does not cover Big Time's liability in the underlying sexual-assault action. Watford's CGL policy explicitly excludes coverage for any liability arising from employment-related acts or omissions, including harassment and humiliation. *See id.* at 67, 71. It also excludes bodily injury to an employee or injury caused by the insured's employees. *See id.* at 64, 69. The plaintiff in the underlying sexual-assault action allegedly sustained damages from Big Time's employee, in the course of plaintiff's employment with Big Time. This type of harm is exactly what Watford excluded from its coverage, so Watford is not obligated to contribute to the settlement amount paid by Hiscox.

Hiscox argues that one provision of the Watford CGL policy—the Limited Coverage Assault or Battery Endorsement, *see id.* at 94, provides coverage for the underlying sexual-assault action. *See* Hiscox Mot. at 5–6. Initially, Watford's CGL policy excluded coverage for damages or injuries arising out of assault, battery, harmful or offensive contact, or false imprisonment, "whether committed by any insured, patron, agent, employee, or any other individual." *See* [ECF No. 1-2] at 38 (hereinafter, the "Assault and Battery Exclusion"). But later in Watford's CGL policy, the parties agreed to a limited reinstatement of the coverage excluded by the Assault and Battery Exclusion. *See id.* at 94 (hereinafter, the "Reinstatement Provision"). Via the Reinstatement Provision, Watford and Big Time "agreed that the specific coverage excluded by

[the Assault and Battery Exclusion] is reinstated on a limited basis in accordance with [several additional terms and conditions.]" *Id.*  Hiscox argues that this limited reinstatement of coverage causes Watford's CGL policy to cover the underlying sexual-assault action.

Hiscox too broadly interprets the effect of the Reinstatement Provision. That provision tethered itself to the Assault and Battery Exclusion. *See id.* (referencing the "specific coverage" excluded by the Assault and Battery Exclusion). In other words, the scope of the Reinstatement Provision is confined to the scope of the Assault and Battery Exclusion. In determining the scope of the Assault and Battery Exclusion, the Court notes that the exclusion did not affect the other exclusions in Watford's CGL policy, which made every effort to exclude coverage for employment-related practices. Thus, while the Reinstatement Provision gave back what the Assault and Battery Exclusion took away, the Reinstatement Provision did not supersede the other provisions that excluded coverage for events like the underlying sexual-assault action.

To agree with Hiscox's interpretation would give too much weight to the Reinstatement Provision at the expense of the Watford CGL policy as a whole. *See Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003) ("[W]hen analyzing an insurance contract, it is necessary to examine the contract in its context and as a whole, and to avoid simply concentrating on certain limited provisions to the exclusion of the totality of others."). Hiscox's interpretation would render meaningless, or at least ambiguous, all of the employment-related exclusions—for example, the exclusion for criminal acts committed by or at the discretion of the insured and the exclusion for injury arising out of employment-related practices or actions. *See* [ECF No. 1-2] at 67, 70. On the other hand, Watford's interpretation gives meaning to both the exclusions and the Reinstatement Provision: the exclusions for employment-related practices still apply, while the Reinstatement Provision gives back limited coverage for assault and battery claims made against

Big Time by non-employees.[4] Because Watford's interpretation avoids ambiguity and gives meaning to each provision within the Watford CGL policy, Hiscox's contrary interpretation must fail.

## II. The Intent Behind Watford's CGL Policy Precludes Equitable Contribution.

Even if the Reinstatement Provision caused Watford's CGL policy to be ambiguous, the Court would resolve the ambiguity in favor of Watford. Normally, when an insurance contract is ambiguous, courts resolve the ambiguity in favor of the insured. *E.g.*, *City of Fla. City v. Pub. Risk Mgmt. of Fla.*, 307 So. 3d 135, 138 (Fla. 3d DCA 2020). But here, the insured—Big Time— is not a party to the suit. Without this predisposition in favor of the insured, the Court must look elsewhere to resolve any ambiguity, keeping in mind that its goal is to effectuate the intent of the parties to the insurance contract. *See Stuyvesant Ins. Co. v. Butler*, 314 So. 2d 567, 570 (Fla. 1975) ("This Court has consistently adhered to the principle that contracts of insurance should be construed so as to give effect to the intent of the parties . . . .").

The undisputed facts in this case demonstrate that Big Time and Watford did not intend for Watford's CGL policy to cover the underlying sexual-assault action. First, the plain language of Watford's CGL policy took great pains to exclude—on several occasions—the type of harm caused by the underlying sexual-assault action. *See Talbott v. First Bank Fla., FSB*, 59 So. 3d 243, 245 (Fla. 4th DCA 2011) ("[T]he plain language is the best evidence of the parties' intent."). Second, it is common industry practice to obtain Employment Practices Liability insurance separately from Commercial General Liability insurance because the risks covered by each are different. *See* Watford SMF ¶ 25. Commercial General Liability policies cover harm claimed by

---

[4] This interpretation is also consistent with standard industry practice, through which Commercial General Liability insurance—what Watford's CGL policy provided—generally provides coverage for damages "claimed by third parties not employed by the insured." *See* Watford SMF ¶ 22 (citing the expert report of James Robertson, CPCU, ARM).

third parties, while Employment Practices Liability policies cover harm claimed by employees. *See id.* ¶¶ 22–23. This is why Big Time obtained Hiscox's EPL policy separately from Watford's CGL policy—Big Time understood Watford's CGL policy to exclude coverage for employment-related damages. *See id.* ¶¶ 15, 19.[5] Third, from a practical standpoint, Big Time would not have obtained insurance from Hiscox if Big Time understood Watford's CGL policy to already cover risks arising from employees' actions; Big Time had no interest in purchasing duplicative insurance. *See id.* ¶ 20.

To summarize: even if Watford's CGL policy was ambiguous, the evidence in the record shows that the Watford CGL policy was not meant to cover the underlying sexual-assault action. Rather, as Big Time and Watford agree, the Hiscox EPL policy was intended to cover risks like the underlying sexual-assault action, while the Watford CGL policy covered different types of risks. Because Watford's CGL policy was not intended to cover the underlying sexual-assault action, Watford is not liable for equitable contribution.

## CONCLUSION

Watford's CGL policy did not cover the misconduct giving rise to the underlying sexual-assault action. Thus, Watford is not subject to equitable contribution for the amount paid by Hiscox to settle that action. Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Hiscox's Motion for Summary Judgment [ECF No. 38] is **DENIED**.

2. Watford's Motion for Summary Judgment [ECF No. 39] is **GRANTED**.

3. The Court will separately enter a final judgment in favor of Watford.

---

[5] Hiscox failed to file a Response Statement of Material Facts to dispute Watford's Statement of Material Facts. Without such a response from Hiscox, and because Watford has provided citations to the record to support its Statement of Facts, the Court considers Watford's evidence of intent to be undisputed. *See* S.D. Fla. Local Rule 56.1(c).

**DONE AND ORDERED** in Miami, Florida, this 23rd day of December, 2022.

_____
**RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE**